UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CALVIN JEFFREY,

                     Plaintiff,

-against-

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]

                     Defendant.

21-cv-06502 (JLR) (BCM)

**ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Calvin Jeffrey ("Plaintiff" or "Jeffrey") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking judicial review of a final order by the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits. *See* ECF No. 1. Now before the Court is the Report and Recommendation issued by Magistrate Judge Barbara C. Moses (the "Magistrate Judge"), dated February 8, 2023, regarding the parties' cross-motions for judgment on the pleadings. *See* ECF No. 38 ("R&R"). Plaintiff has filed objections to the R&R, which the Commissioner opposes. *See* ECF No. 39 ("Obj."); ECF No. 40 ("Opp."). The Magistrate Judge recommends that Plaintiff's motion be denied, the Commissioner's motion be granted, and that the case be dismissed. *Id.* For the reasons set forth below, the Court adopts the R&R in full, and dismisses this case.

## BACKGROUND

The R&R sets forth in detail the factual background and procedural history of this case, with which the Court assumes the parties are familiar. *See* R&R at 1-18. The Court

---

[1] The Clerk of Court is respectfully directed to update the docket sheet consistent with this caption.

incorporates that portion of the R&R herein, refers the reader to the R&R for a more comprehensive background, and provides a shorter statement of the case below. Because Jeffrey does not object to the Magistrate Judge's recitation of the record, and because the issue before the Court concerns treatment of the facts rather than the facts themselves, it is unnecessary to repeat that lengthy recitation here. Instead, the Court will briefly summarize the factual record for ease of reference.

Plaintiff is an army veteran, who worked at a social services agency until April 2017, when he was diagnosed with HIV/AIDS. *See* R&R at 1. On September 29, 2017, Plaintiff applied for disability benefits, alleging that since April 14, 2017, he had been disabled "due to blind or low vision, anxiety, type 2 diabetes, AIDS, and muscular dystrophy." *Id.* (citing ECF No. 14 ("Admin Record") at 239-53, 283) (internal quotation marks and brackets omitted). The Social Security Administration ("SSA") denied his claim on December 5, 2017, and after a series of delays, Plaintiff appeared, and testified, before an Administrative Law Judge ("ALJ") for a hearing on his claim on February 5, 2020. *Id.* at 2. On October 19, 2020, the ALJ issued a decision denying Plaintiff's claim, in which the judge concluded that Plaintiff "was not disabled within the meaning of the Act." *Id.* (citing Admin Record at 10-21). The Appeals Council denied further review of that decision on May 27, 2021, and Plaintiff brought this action. *Id.* (citing Admin Record at 1).

The Administrative Record contains an array of medical evidence from treating providers and related opinions. *See id.* at 2-11. Of particular note is: (1) a medical assessment and records from Dr. Peter Marcus, who treated Plaintiff for 22 years, at the Claremont Family Health Center ("Claremont"), *id.* at 2 (citing Admin Record at 75); *see also* Admin Record at 515-23; 913-1181; (2) a medical assessment and records from Dr. James Wendt, a doctor at the James J. Peters VA Medical Center ("VAMC") who first diagnosed

2

Plaintiff with HIV/AIDS in April 2017, R&R at 2-3; *see also* Admin Record at 1182-87; and (3) treatment records from Dr. Norbert Brau, who became Plaintiff's primary care doctor at VAMC in mid-2019, R&R at 3; *see also* Admin Record at 1188-92.  Since at least 2010, Plaintiff had been diagnosed with – and was being treated by Dr. Marcus for – a slew of medical issues, including but not limited to hypertension, anxiety, Type 2 diabetes, high cholesterol, diabetic neuropathy, and vertigo.  R&R at 3.  In 2016, he was diagnosed with gastroesophageal reflux disease ("GERD").  *Id.*

In early 2017, Plaintiff began seeking treatment for weight loss and depression.  *Id.* After a series of trips to Dr. Marcus and the emergency room, he went to see Dr. Wendt at the VAMC for a second opinion.  *Id.* (citing Admin Record at 788).  Even though Plaintiff had a "fairly extensive workup by outside primary," as Dr. Wendt recorded, Dr. Wendt ordered additional "zebra" tests.  *Id.* at 3-4.  Plaintiff went to the emergency room once more, and on April 29, 2017, Dr. Wendt ordered an HIV test, which came back positive.  *Id.* at 4.  Plaintiff was informed by Dr. Wendt of this diagnosis on May 2, 2017, who "reassured [P]laintiff that HIV/AIDS is 'readily treatable.'" *Id.* at 4 (quoting Admin Record at 732).  Over the course of the spring and summer of 2017 following his diagnosis, Plaintiff was treated by Dr. Marcus, who Plaintiff later testified specialized in HIV treatment.  *Id.* at 4, 11 (citing Admin Record at 74-75, 83).  Plaintiff eventually saw significant improvement in both his symptoms and his HIV "viral load."  *Id.* at 4-5 & n.3.

In 2019, he returned to the VAMC to see Dr. Wendt for the first time since his HIV diagnosis.  *Id.* at 5.  While Plaintiff later testified this was likely his third appointment with Dr. Wendt, the "VAMC records do not reflect" this.  *Id.* at 12 & n.10.  At his second appointment, which was for erectile dysfunction, he indicated that he wanted to switch his primary care to VAMC.  *Id.* at 5, 11-12.  He subsequently had an appointment with Dr. Brau

3

at the VAMC, who reported that Plaintiff's HIV was "undetectable," and he was "asymptomatic." *Id.* at 5 (quoting Admin Record at 658). He continued to visit the VAMC to manage his HIV, and also saw doctors there for his anxiety, diabetes, severe shoulder pain, and back problems (among his other diagnoses). *See id.* at 6-7, 12 (describing Plaintiff's testimony about his treatment at VAMC).

Most of Plaintiff's treating physicians have completed medical assessments that are now a part of the administrative record. Dr. Marcus completed both a Residual Functional Capacity Assessment and Mental Capacity Assessment of Plaintiff in September 2018, which concluded that Plaintiff did not have any working limitations or require any special accommodations. *Id.* at 7-9. In July 2019, Dr. Wendt completed a Medical Source Statement of Ability to Do Work-Related Activities, where he concluded that Plaintiff was significantly limited in physical activities due to a "bout of Guillain-Barre." *Id.* at 8. According to Dr. Wendt, Plaintiff could only sit for up to five hours a day, stand for only 30 minutes at a time, and walk for only 10 minutes at a time. *Id.* He could only occasionally climb, kneel, or crawl, could not tolerate conditions including humidity and wetness or extreme cold, and could not operate a motor vehicle or use public transportation. *Id.* at 9. A more fulsome recitation of Dr. Wendt's conclusions is stated in the R&R. *Id.* at 8-9. Importantly, however, all limitations stemmed from various diagnoses, but none were attributed to HIV. *Id.* This was consistent with Plaintiff's testimony at the hearing before the ALJ, where he explained that he was unable to work because he was "fatigued and had muscle pains because of his experience, more than 30 years earlier, with Guillain-Barre syndrome." *Id.* at 11. (internal quotation marks and citation omitted).

Additionally, after Plaintiff's hearing before the ALJ, the ALJ sent written interrogatories to a vocational expert, Raymond Cestar. *Id.* at 12. No vocational expert had

4

testified at Plaintiff's hearing. *Id.* Cestar's answers described Plaintiff's prior work experience as a case manager (a sedentary position), a residential manager (a position at the "light exertional" level), and a client care worker (a position at the "medium exertional" level). *Id.* at 12-13. Cestar opined that a hypothetical individual who could not work on "ladders[,] ropes or scaffolds, or slippery or uneven surfaces," who could "occasionally work on ramps and stairs," who could "occasionally balance, stoop, crouch, crawl and kneel," who could "only occasionally reach or handle overhead bilaterally," and who could not "work at unprotected heights or around dangerous machinery" could perform Plaintiff's sedentary job as a case manager. *Id.* at 13 (quoting Admin Record at 366). Cestar was also asked whether an individual with the aforementioned limitations could perform any of Plaintiff's prior roles provided they were limited to sedentary work. *Id.* Cestar responded that the hypothetical individual could still work as a case manager, but if an individual were instead "limited to 'simple and routine work,' he would not be able to perform any" of Plaintiff's past roles, which are all considered "skilled/semi-skilled." *Id.* at 13 (quoting Admin Record at 369).

The ALJ sent Plaintiff and his counsel a letter on June 12, 2020 notifying them of Cestar's new evidence, instructing them how to access it, and inviting counsel "to submit written comments, submit written questions for [Cestar], or request a supplemental hearing" within 10 days of the date of notice. *Id.* at 13-14. The ALJ warned that failure to timely respond would permit him to enter the new evidence into the record and issue his decision. *Id.* Plaintiff and his counsel did not respond, and the ALJ issued his decision on October 19, 2020. *Id.* at 14.

The R&R sets forth the ALJ's findings in detail. *Id.* at 14-18. As relevant here, the ALJ made the following conclusions: (1) Plaintiff had four severe physical impairments, including diabetes mellitus with neuropathy, cervical spine degenerative disc disease,

5

degenerative joint disease of the right shoulder, and a history of Guillain-Barre syndrome, but his HIV was not severe, *id.* at 14-15; (2) none of Plaintiff's impairments or combinations of impairments "met or medically equaled the severity of any impairment listed in 20 C.F.R. part 404, subpart P, appendix 1," *id.* at 15 (citing Admin Record at 16); (3) considering the treating physician's opinions – and affording Dr. Wendt's opinion little weight because it appeared inconsistent with his progress notes – Plaintiff had the residual functional capacity ("RFC") to perform light work under the SSA's regulations, *id.* at 16-17; and finally, (4) because Plaintiff was capable of performing his past work as a case manager, he was not disabled from April 14, 2017 through the decision date, *id.* at 18.

Plaintiff sought judicial review of the ALJ's decision before this Court, and both Plaintiff and the Defendant moved for judgment on the pleadings. On February 8, 2023, the Magistrate Judge issued an order recommending Plaintiff's motion be denied, Defendant's motion be granted, and the case be dismissed. R&R at 1.

## STANDARD OF REVIEW

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.' . . . 'The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by

allowing parties to relitigate every argument which it presented to the Magistrate Judge.'" *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting *Vega v. Artuz*, No. 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).

## DISCUSSION

"A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled." *Weather v. Astrue*, 32 F. Supp. 3d 363, 368 (N.D.N.Y. 2012). "In reviewing a final decision of the [Commissioner], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)). The Supreme Court has defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, "[i]f the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld." *Weather*, 32 F. Supp. 3d at 368. "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir.

7

1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

In order to determine whether an individual is disabled within the meaning of the Act and entitled to disability benefits under the Act, the Commissioner engages in a five-step process. *See Talavera*, 697 F.3d at 151. First, the Commissioner determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is "no," then the Commissioner considers, at the second step, whether the claimant has a "severe medically determinable" impairment during the relevant time period, and the Commissioner may consider whether a combination of medically determinable impairments together are "severe." 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." *Campbell*, 596 F. Supp. 2d at 450. If the answer is "yes," the Commissioner will then consider, at the third step, whether that impairment "meets or equals one of [the] listings in" a subchapter of the SSA's regulations. 20 C.F.R. § 404.1520(a)(4)(iii). "At step four, the Commissioner must determine the claimant's residual functioning capacity ('RFC') and then determine whether the claimant has the RFC to perform the requirements of the claimant's past relevant work." *Campbell*, 596 F. Supp. 2d at 450; *see* 20 C.F.R. § 404.1520(a)(4)(iv). Finally, at the fifth step, considering the RFC, age, education, and work experience, the Commissioner assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If that answer is "no," the claimant is considered disabled. *Id.*

Plaintiff here makes five objections to the Magistrate Judge's determination that there was "substantial evidence" to support the ALJ's conclusions. While some of these objections are fairly general, the Court reviews each of them *de novo* in turn.

1. **Objection 1**

Plaintiff first objects to the R&R on the grounds that the Magistrate Judge erred when she concluded that the ALJ did not deprive Plaintiff of an opportunity to cross-examine Cestar, the vocational expert. The Court finds no error in this holding.

Generally, a disability claimant has a due process right to "cross examine the author of an adverse report and to present rebuttal evidence." *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984). This right, however, "is not absolute." *Williams v. Colvin*, No. 15-cv-06719 (KMK) (PED), 2016 WL 11270671, at *15 (S.D.N.Y. Dec. 14, 2016), *report and recommendation adopted sub nom. Williams v. Comm'r of Soc. Sec.*, No. 15-cv-6719 (KMK) (PED), 2017 WL 4326119 (S.D.N.Y. Sept. 28, 2017); *see also Yancey*, 145 F.3d at 113 (adopting Sixth Circuit conclusion that "the requirements of due process are satisfied by providing a claimant with the opportunity to cross-examine a reporting physician where reasonably necessary to a full development of the evidence in the case" (internal quotations marks and citation omitted)). Remand is appropriate when the ALJ violates a claimant's due process rights. *See Henry v. Astrue*, No. 07-cv-0957 (WCC), 2008 WL 5330523, at *13 (S.D.N.Y. Dec. 17, 2008) (citing *Townley*, 748 F.2d at 114). But, due process is "highly fact-dependent – the Social Security Administration does not violate a plaintiff's due process rights whenever an ALJ relies upon a report and the plaintiff fails to cross-examine the author." *Glessing v. Comm'r of Soc. Sec.*, No. 19-cv-05704 (BMC), 2021 WL 1390640, at *12 (E.D.N.Y. Apr. 13, 2021), *aff'd*, No. 21-1192, 2022 WL 457243 (2d Cir. Feb. 15, 2022).

Plaintiff argues that, in assessing the deprivation of Plaintiff's right to cross-examine Cestar, the Magistrate Judge failed to consider that the SSA had been "aware" of delays in the mail, and that they were going to "refrain[] from taking adverse actions in a variety of cases . . . ." Obj. at 2. He contends that the Magistrate Judge failed to take into account that Plaintiff's counsel attempted to contact the SSA, but the phone lines were busy. *Id.* at 3. He further maintains that his inability to cross-examine Cestar was not only a deprivation of his due process rights, but was also not "harmless" because the ALJ did not ask Cestar about Plaintiff's needs with regard to sick days, and how that would impact his employability. *Id.*

The Court concludes that Plaintiff has not shown that his due process rights were violated on these facts because he and his counsel were presented with notice of Cestar's report, and permitted time to respond. As articulated in the R&R, the ALJ sent written notices of Cestar's interrogatory responses, informing counsel and Plaintiff about how to review the evidence and articulating the several ways in which Plaintiff could respond to Cestar's opinions, including via written submission or a supplemental hearing. R&R at 21-22. There is no evidence in the record from which the Court can conclude that these notices were not sent or delayed such that the ALJ's decision – which was issued four months later – deprived Plaintiff of his due process rights. *See id.* at 22 & n.16 (noting that only attorney argument, and not evidence, described the notice arriving mere days before the ALJ's decision was issued). Indeed, as in *Williams v. Colvin*, "[t]he ALJ here allowed Plaintiff a fair and meaningful opportunity to present his case." 2016 WL 11270671, at *15. Unlike the cases in which courts conclude that a plaintiff's due process rights were violated, this case does not present a situation where the plaintiff was not given any notice of the supplemental report or testimony. *Cf. Brennan v. Colvin*, No. 13-cv-06338 (AJN) (RLE), 2015 WL 1402204, at *16 (S.D.N.Y. Mar. 25, 2015) (remanding social security appeal to ALJ where the ALJ did not

hold a "supplemental hearing" for plaintiff to cross-examine a vocational expert, and did not even forward the plaintiff the expert's report); *Henry*, 2008 WL 5330523, at *12 (remanding social security appeal where the "plaintiff was not provided with the evidence that [the vocational expert] relied upon in reaching his determination and, therefore, [plaintiff[ was denied a proper opportunity to cross examine [the expert] and to rebut [the expert]'s evidence"). Plaintiff has not pointed to – and the Court is not aware of – any authority which would suggest that the ALJ was required to provide additional notice – or to wait more than four months to issue his decision – under circumstances like those here. Plaintiff was given notice of Cestar's opinion, and there is nothing in the record for the Court to conclude that this notice was insufficient.

Accordingly, on *de novo* review, based on the circumstances here, the Court agrees with the Magistrate Judge that the ALJ did not err or violate Plaintiff's due process rights with respect to Cestar's interrogatory responses.

### 2. Objection 2

Plaintiff next objects to the R&R on the grounds that the Magistrate Judge erred in affirming the ALJ's decision to discount opinion evidence from treating provider Dr. Wendt. Obj. at 4. Specifically, Plaintiff contends that contrary to the R&R, he is not arguing that the former "controlling weight test," or "treating physician" rule should apply, but rather that only Dr. Wendt knew the full scope of Plaintiff's conditions, and therefore the ALJ improperly discounted Dr. Wendt's opinions. *Id.* The Court finds this objection to be without merit.

Under current regulations, an ALJ is instructed to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." 20 C.F.R. § 404.1520c(a). The regulations further provide that, when determining what weight, if any,

to give to certain medical opinions, an ALJ ought to consider a variety of factors, including but not limited to "supportability," "consistency," and "relationship with the claimant" – which includes "length of the treatment relationship," "frequency of examinations," and "extent of the treatment relationship."  20 C.F.R. § 404.1520c(c).  "Of these factors, the 'most important' are supportability and consistency."  *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-cv-04630 (LJL) (BCM), 2020 WL 8167136, at *13 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom*. *Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-cv-04630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).  As to supportability, the regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R § 404.1520c(c)(2).  "That an ALJ does not give controlling weight to a particular medical opinion is not a basis for second-guessing the ALJ's conclusions."  *Peets v. Kijakazi*, No. 21-03150, 2022 WL 17725391, at *1 (2d Cir. Dec. 16, 2022).

Plaintiff primarily argues that, in giving little weight to Dr. Wendt's opinions, the ALJ failed to consider all of the treatment that Plaintiff was receiving from the VAMC for 44 years.  Obj. at 4-5.  For instance, Plaintiff argues that he saw Dr. Marcus on a "decreasing basis" during the relevant time period, but saw Dr. Wendt on an "increasing basis" during that time period.  *Id.* at 4.  Plaintiff further argues that Dr. Wendt provided care for his "most serious ailments," including Guillain-Barre syndrome and HIV.  *Id.*  Plaintiff also attempts to

undermine the ALJ's reliance on Dr. Marcus's opinions, noting that "Dr. Marcus did not know of [Plaintiff]'s Gillian-Barre Syndrome . . . ." *Id.* at 5. He argues that, considering the regulations, the "consistency" factor weighs toward Dr. Wendt, as does the "relationship" factor in the regulations. *Id.*

The ALJ's decision to discount Dr. Wendt's assessment does not constitute legal error on this record. The ALJ here considered significant medical evidence from treating providers, including from Drs. Wendt and Marcus, and weighed several factors in evaluating their assessments. The ALJ explicitly found the medical assessment of Dr. Wendt not to be persuasive for reasons Plaintiff does not address in his objections. Admin Record at 19-20. The ALJ noted that as part of the record, Dr. Wendt had provided only "scant progress notes . . . documenting significant clinical finding" to support the "profound" limitations he opined on. *Id.* The ALJ referenced explicit instances of apparent inconsistencies between Dr. Wendt's notes and his ultimate assessment. *See id.* at 20. For instance, the ALJ stated that "[a]t no point, during these examinations did Dr. Wendt observe motor strength deficits, sensory deficits, or range of motion deficits, which seems at odds with the remarkably diminished functioning assessed by Dr. Wendt." *Id.* at 20. The Magistrate Judge's detailed opinion describes further instances of inconsistencies between Dr. Wendt's assessment and the facts in the record. R&R at 25-26. It is clear from these examples alone that the ALJ's decision finding Dr. Wendt's assessment unpersuasive was not erroneous.

Additionally, Plaintiff appears to overstate the ALJ's reliance on the opinion of Dr. Marcus. Dr. Marcus treated Plaintiff for 22 years, while Dr. Wendt appears to have seen Plaintiff only a handful of times before 2019 (though Plaintiff had seen other doctors at VAMC). *See* Opp. at 5; Admin Record at 19; R&R at 12 & n.10 (noting that "VAMC records do not reflect" a third appointment). The length and frequency of a plaintiff's visits with each

doctor, as the Commissioner points out, is relevant, but of limited value under current regulations. Opp. at 5. While Plaintiff points out that Dr. Marcus failed to diagnose Plaintiff's HIV and did not know about his Guillain-Barre syndrome, the ALJ did not afford Dr. Marcus's opinion controlling weight. Rather, the ALJ only found Dr. Marcus's assessment – which was consistent with his documented findings – "partially persuasive." *See* Admin Record at 19. The Court sees no error in this evaluation of the medical assessments in the record.

Accordingly, on *de novo* review, the Court agrees with the Magistrate Judge that the ALJ did not err with respect to the opinions of Dr. Marcus or Dr. Wendt.

### 3. Objection 3

Plaintiff next objects to the R&R on the grounds that the Magistrate Judge erred in affirming the ALJ's determination that Plaintiff's HIV was "non-severe." Obj. at 6. Plaintiff argues that the Magistrate Judge failed to consider that Plaintiff's Guillain-Barre syndrome interacts with his HIV in such a way as to render the HIV severe. *See id.* at 6-7. But as both the Magistrate Judge and Commissioner pointed out, this contention is unsupported by the record, and the ALJ adequately addressed Plaintiff's impairments.

"An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." *Campbell*, 596 F. Supp. 2d at 450; *see also* 20 C.F.R. § 404.1520(c). "Basic work activities" include "walking, standing, sitting, lifting, pushing pulling, reaching, carrying, or handling" as well as other activities such as "remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work situations," among other things. 20 C.F.R. § 404.1522(b). At step two of the ALJ's process for determining whether a claimant is disabled under the SSA, the ALJ here concluded that Plaintiff had the following severe

14

impairments: "diabetes mellitus with neuropathy; cervical spine degenerative disc disease; degenerative joint disease of the right shoulder; and history of Guillain-Barre syndrome." Admin Record at 13. The ALJ specifically did not consider Plaintiff's HIV to be "severe" because "the claimant has routinely been described as asymptomatic and stable with a largely undetectable HIV RNA and increased CD4 cell count." *Id.* Contrary to Plaintiff's objection, *see* Obj. at 8, this finding was amply supported by the medical records and assessments, as further detailed in the R&R; indeed, even Dr. Wendt, who had opined that Plaintiff's various impairments significantly limited his abilities, did not opine that Plaintiff's HIV was severe enough to impair basic work activities, *see* R&R at 28 (citing Admin Record at 1182-86).

Other courts in this Circuit routinely have concluded that an ALJ's finding that HIV was non-severe was supported by substantial evidence where the HIV was under control, as it was here. *See, e.g.*, *Collins v. Berryhill*, No. 16-cv-00761 (MAT), 2018 WL 6171709, at *3-4 (W.D.N.Y. Nov. 26, 2018) (affirming ALJ finding that HIV was "non-severe" where "medical evidence of record, . . . demonstrate[d] that Plaintiff's HIV infection was well-controlled and he is generally asymptomatic, with good CD4 levels and an undetectable viral load the majority of the time"); *Ziemoore v. Berryhill*, No. 17-cv-04621 (GHW) (AJP), 2017 WL 5157467, at *5, 8 (S.D.N.Y. Nov. 7, 2017), *report and recommendation adopted sub nom. Ziemoore v. Comm'r of Soc. Sec.*, No. 17-cv-04621 (GHW) (AJP), 2017 WL 6000608 (S.D.N.Y. Dec. 1, 2017) (affirming ALJ finding HIV non-severe where "the record does not contain objective medical evidence of clinical findings, outside of diagnoses, confirming the existence of a severe impairment"). Moreover, Plaintiff's argument that his Guillain-Barre syndrome made his HIV severe is unavailing because the ALJ in fact determined that Plaintiff's history of Guillain-Barre was itself a severe impairment. *See Wayne Kenneth R. v. Comm'r of Soc. Sec.*, No. 21-cv-01341 (MKV) (GRJ), 2022 WL 4537909, at *5 (S.D.N.Y.

15

July 4, 2022), *report and recommendation adopted sub nom. Reed v. Comm'r of Soc. Sec.*, No. 21-cv-01341 (MKV) (SLC), 2022 WL 4538942 (S.D.N.Y. Sept. 28, 2022) (affirming ALJ finding HIV non-severe where claimant argued HIV-related anxiety was severe because ALJ had concluded claimant's anxiety disorder was a severe impairment).

Accordingly, on *de novo* review, the Court agrees with the Magistrate Judge that the ALJ did not err in concluding that Plaintiff's HIV was non-severe.

### 4. Objection 4

Plaintiff next objects to the R&R on the grounds that the Magistrate Judge erred in finding that the ALJ properly assessed Plaintiff's "frequent illnesses and sick day needs." Obj. at 8-9. This objection is also meritless.

Plaintiff contends that the ALJ failed to consider that Plaintiff will require the following medical appointments: "testosterone shots every two weeks, bloodwork every other month for his testosterone levels, bloodwork every three months for his HIV, seasonal vaccines, monthly bloodwork for his diabetes," as well as routine appointments and frequent sick days. Obj. at 8-9. The Magistrate Judge concluded that the ALJ did not err in not considering this schedule of appointments because there was nothing in the record to suggest that Plaintiff would miss work or require an "enhanced sick day allowance." R&R at 31. The Magistrate Judge relied on *Jason R. v. Comm'r of Soc. Sec.*, No. 19-cv-01641 (FPG), 2021 WL 1131265, at *7 (W.D.N.Y. Mar. 24, 2021) and *Glowacki v. Comm'r of Soc. Sec.*, No. 19-cv-01526 (TPK), 2021 WL 2980526, at *5 (W.D.N.Y. July 15, 2021) to conclude that, because there was no medical opinion in the record about Plaintiff's need to miss work for the aforementioned appointments, or that the appointments would be so frequent so as to prevent Plaintiff from attending work on a consistent basis, the ALJ did not err in not considering the appointments. *See* R&R at 31-32. In both *Jason R.* and *Glowacki*, courts rejected arguments

16

similar to Plaintiff's – that plaintiffs would need to miss excessive workdays – in part because no medical opinions in the record supported that argument. *See Jason R.*, 2021 WL 1131265, at *7; *Glowacki*, 2021 WL 2980526, at *5. Plaintiff, in his objections, argues that his case is different from *Jason R.* or *Glowacki* because he will need more than four appointments a month. Obj. at 9. Putting aside the accuracy of that statement – indeed, the appointments are not all monthly – Plaintiff still fails to point to evidence explaining that these appointments would necessarily require missing an extensive amount of work. The Court is unpersuaded that this case poses a circumstance where, absent a medical opinion to the contrary, the ALJ erred in failing to conclude that Plaintiff's medical appointments and sick days were so frequent so as to prevent Plaintiff from attending work regularly. Moreover, Plaintiff does not address the Magistrate Judge's observation that the medical appointments were the same as those Plaintiff attended prior to April 2017. *See* R&R at 31 n.23. That fact certainly suggests that they are not so frequent as to disrupt his regular work schedule.

Accordingly, on *de novo* review, the Court agrees with the Magistrate Judge that the ALJ did not err in its assessment of Plaintiff's needs with regard to medical appointments and sick days.

5. **Objection 5**

Finally, Plaintiff objects to the R&R on the grounds that the Magistrate Judge erred in concluding that the ALJ's decision was based on substantial evidence. Obj. at 10. This is a fairly general objection, but Plaintiff appears to primarily argue that the ALJ's decision is not supported by substantial evidence because it ignored comorbidities in Plaintiff's diagnoses, and "[t]he ALJ and Magistrate may not ignore comorbidities simply because they are not 'opined' upon by doctors." *Id.* Plaintiff's arguments that the ALJ cannot ignore evidence that a doctor did not opine on are entirely unsourced in his objections. *See* Obj. at 10-11.

More specifically, Plaintiff argues that Dr. Wendt did address the comorbidities between Plaintiff's Guillain-Barre syndrome and HIV, *id.* at 11, and the ALJ improperly ignored those insights. But the record does not support this argument. Dr. Wendt's report articulates limitations due to panic disorders and a past history of Guillain-Barre syndrome, as well as neuropathy. Dr. Wendt did not otherwise mention comorbidities with respect to HIV. *See* Admin Record at 1182-87. The ALJ considered Dr. Wendt's opinion, including his opinion with regard to neuropathy – which Plaintiff contends is a "rare complication of HIV-associated Guillain-Barre syndrome" (Obj. at 11) – and concluded that it was not supported by his contemporaneous progress notes, as previously discussed *supra* Section 2. As the Magistrate Judge explained, "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). The ALJ properly weighed medical opinions provided by various doctors, including Dr. Wendt, and rendered an RFC assessment that is supported by substantial evidence. *See* R&R at 33; *see also Winder v. Berryhill*, 369 F. Supp. 3d 450, 457 (E.D.N.Y. 2019) ("Although, the Court is generally required to defer to the medical opinion of a treating physician, those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts." (internal citation omitted)); *Weather*, 32 F. Supp. 3d at 369 (noting that "[c]onflicts in evidence . . . are for the Commissioner to resolve"). Specifically, the ALJ concluded that Plaintiff had the RFC to perform "light work" under the SSA's regulations, consistent with his past work as a case manager. Admin Record at 20-21. Plaintiff has not pointed to anything in the record to suggest that this conclusion was not based on substantial evidence. On *de novo* review, the Court agrees with the Magistrate Judge that the ALJ's decision is supported by substantial

evidence. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" (internal citation omitted)).

## CONCLUSION

Plaintiff's objections are meritless. Accordingly, the Court adopts the R&R in full. The Clerk of Court is respectfully directed to update the docket sheet consistent with this caption, and CLOSE this case.

Dated: May 16, 2023
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge